Counsel. Good morning, Your Honors. My name is Todd Mabrown, and I am the attorney for the petitioner in this case, Luke Saraich. We are asking this Court to reverse the district court's dismissal of Mr. Saraich's habeas corpus petition under Section 2254. We argue in our briefs that the Court erred in several respects, but I'd like to focus the argument this morning on the procedural default issue. It seems to me it's the most pressing issue. That is the most pressing from my perspective. And I would agree, it seems to me, to raise a significant concern. And I think the argument starts and ends with the question, what is this Court going to do about the Moorman decision from 2005? We argued in the district court that the Moorman decision was dispositive. It supported our claim of cause. The district court agreed. But what the district court said, essentially it reads like a dissenting opinion as if it had been on the panel in Moorman, said, I don't like Moorman, I don't agree with Moorman, and I'm not going to apply Moorman. Well, what do we do with Moorman, though, in the green light of Bowman, and I think what is fairly characterized as a long line of Supreme Court or a long line of both Supreme Court and Ninth Circuit authority that suggests that he is procedurally defaulted because there is no constitutional right to ineffective assistance to make a claim for IAC by appellate counsel. Well, let me first respond to the one of the sub-issues. I think the Moorman decision itself specifically deals with those cases and Well, if you can help me reconcile Moorman with those cases, Mr. Maybrown, I am all ears. I am having a very difficult time, as Magistrate Judge Anderson did, in figuring out why Moorman does not completely be contradictory to a fairly long line of Ninth Circuit authority. Well, let me try to do that, but I should point out, assuming that I don't convince you, if there is an irreconcilable conflict in this circuit between the cases First step first. Okay. Then we would need to get to en banc. Yes. I know that. So help me avoid having to make an en banc call. I'm going to do my best. Okay. Your Honor, the distinction that's drawn in Moorman is between the claims of ineffective assistance of counsel on post-conviction review, where you don't have the right to counsel, either in a habeas case, Federal habeas case, or ineffective assistance counsel on PCR, post-conviction review, in Montana or elsewhere. Many of the cases that are cited are from other States. Right. What Moorman says is we very much recognize that that's been the rule, but in the particular situation where you're claiming that your appointed counsel on appeal was ineffective in defaulting a claim by not raising it in that appeal, that's a different animal. That's what the Court says. That actually is consistent with decisions from the Sixth Circuit, the Seventh Circuit, the Eighth Circuit, and the Eleventh Circuit. And I cite those in my brief. So what the Court is trying to do in Moorman is draw that distinction, a distinction that's not clear from the prior cases. And I have to say, I read all of those cases last night, the cases you cited, and they are about the most confusing factually that I've ever dealt with. But let me draw some distinctions that I've seen. And I'm not going to go into the details of that. I'm just going to draw some very fine judges on this Court. Well, partly because the procedure, and many of those were pre-AEDPA cases, and there were multiple petitions and there were multiple recall the mandate here, new counsel there. It's very confusing. But it seems to me that there are some interesting distinctions. I looked at Bonin, for example, the case from 1996, and what the Court seemed to be concerned with is the claim in the first Federal habeas corpus petition was the concern. That's what the Court seemed to say. And the suggestion was if it had been raised in the first habeas corpus petition, like our case, then it would have been a proper claim. The Martinez-Villarreal case is about as complicated as you've ever seen. There are three different attorneys, one called Rothstein, one called Davis, one called Bruner. So the claim that there was an independent counsel was defeated by the fact that that petitioner got a new attorney, Davis, and it was Davis who had not raised the claim. So they said you can't make this argument that it was the same attorney before because your second attorney had the opportunity and he failed to follow, I think it was California or Arizona procedural requirements. That's what they say. The other case that I looked at, the Moran case, which is a Nevada case and gets complicated by the fact that the petitioner went pro se at trial, and there's no discussion as to when counsel substituted in, what happened there. I can read between the lines to some degree, which I don't think is fair, but what ultimately they said was that the second petition was an abuse of the writ. The second petition in the Nevada courts, second PCR, was an abuse of the writ. So since IAC had not been properly raised in the first petition, then the second petition wouldn't cut it. So it seems to me that there are distinctions, but I'm not sure it's very clear from reading Moorman that all of those distinctions are what the panel, the most recent panel was drawing. Let me ask you for help on a little different aspect of procedural default. Sure. It looks, it kind of looks like Moorman says one thing and our other cases say the other. And it's a hard thing to reconcile. However, the cases are clear that he has to exhaust a claim in the Montana state court before he can use it for habeas in Federal court. And I'm not clear, I read the Montana Supreme Court decision about his ineffective assistance claim, and I'm not sure that the claim that he raises now is the one that he raised in the Montana Supreme Court. Could you help me with that? I'll be happy to help you. He raised in the state court ineffective assistance of trial counsel. The problem was that he never raised ineffective assistance of appellate counsel because the person who prepared his PCR petition was the same lawyer. So wouldn't he then have to do another petition in state court, either pro se or with another lawyer, either one, raising the problem that the reason that he didn't raise this particular claim was that his lawyer basically had a conflict of interest? Well, let me answer that in two ways. First, the district court in Montana indicated that it wasn't an exhaustion problem, and let me point out what happened. When I was retained and saw what was going on in the case, I immediately asked for permission to hold the habeas in the state in abeyance posture so I could go back to Montana and attempt to relitigate those issues. And I cited the appropriate state abeyance cases and I asked for permission. And the district court said no. The Montana attorney general's office objected to that option, and the district court said no, it's not necessary, you don't have a vehicle because your past one year didn't even give us an opportunity to see if we could avoid the one-year limitation. And said the issue here, since you don't have any opportunity and since it's clear what the conflict was and why it wasn't raised, we have to do it. But the reason you didn't have an opportunity wasn't that Montana would not entertain such claims. It was that the statute of limitations was passed. Well, presumably, if you're going to do it. What he's got to do is, within a short enough time so that he gets so that his tolling is adequate, he has to tell the Montana court I'm entitled to post-conviction relief and they have to turn him down. And then he has to get into federal court all within a year minus told time. I mean, I understand the exhaustion principles and the timing principles and I deal with them. So if it's futile to go to the Montana courts because his year is up except on what he's already brought to the Montana courts, that's still procedural default. Well, then it gets back to whether it was there's cause for the procedural default. The cause is, was he defaulted because the claim wasn't raised, as it should have been? It was an appellate claim that could have been raised based on the record. His lawyer that was appointed to assist him in the PCR was the same lawyer that handled the appeal. So, I mean, intellectually speaking, of course it would have been best if he had new timely and we wouldn't have these kind of issues, but there was no opportunity. Mr. Mabry, what about the prejudice prong? If he would have been procedurally barred because he was out of time in Montana and that court would not have entertained the claim, then how can he establish prejudice for federal agency relief, even though he may be able to establish cause in the sense that I couldn't bring my claim before because it was the same lawyer, but he couldn't bring the claim in Montana in order to exhaust the claim because he was too late? But that's not the way prejudice operates in the context of cause and prejudice. The way I understand it and the way the cases have cited, including Moorman, they indicate, was there cause for this default? Secondly, did the Petitioner suffer prejudice because the claim was defaulted if you look at that independent impediment? I mean ---- Let's say you do win on that. Okay. You've got adequate cause, so there's no procedural default if you can show prejudice. Wouldn't we then get to the merits and we have to look at the Montana Supreme Court decision where they say there was no deficient performance because Serajic's lawyer had effectively impeached the witness by showing that the witness had told multiple inconsistent statements and getting this investigator's statement in wouldn't have made any difference anyway? That's ---- And there goes the prejudice? No. Well, it's not on ---- I can't remember the exact buzzwords you're supposed to use under AEDPA, but it's not so far out in left field that it would fail them. Your Honor, the 2254d standard would apply to the ineffective assistance of trial counsel claim, which there's no argument about default. That's just a traditional ineffective assistance prejudice standard. This claim is a juror impartiality claim that should have been raised on appeal, was never addressed by the Montana courts. The district court said I'm not going to reach the merits of the issue now. In Moorman, what the court did and what I would suggest this Court would do and is the most prudent thing to do would be to refer Romand it back to the district court and say we think that there is cause here. Tell us what you think about prejudice. What the court suggested and what I could argue to you is why Mr. Sirage would have won if he raised that appellate issue at that time. And I've argued in my briefs that it was a meritorious claim, that there was precedent in existence before 1998 that supported the claim. In fact, the district court suggested as much when he asked the State to respond. It said it looks like he's going to prevail if he can get by the cause issue here. Tell me what you think of Moorman, and then we get sort of distracted into whether or the fact that there's another attorney that gets involved in the picture being heard. Well, that is distracting. I mean, I find the either the record and or the briefing to be very confusing on that issue as to when these lawyers came in and who was really calling the shot. Well, I think it's confusing because the district court said I'm not going to reach the issue. It's not what's going to be dispositive here. The State says we waived a claim even though the district court said we're not going to reach it. It doesn't make any sense. I tried to supplement in my reply brief to explain to you what was going on, but I think that, again, the district court would have to decide that in the first instance. This Court doesn't want to be creating a record. There's a factual dispute. What were these attorneys doing at the time? We would have to go back to district court. I must be confused about something. Okay. I thought what you were talking about was the claim that the juror should have been challenged for cause, but she was challenged for cause. The one who says, I think I heard of this case, but I wouldn't let it affect my deliberations? That's not what happened. The juror said she had confidential information about the participants in the case which she got from working at a drug treatment center and she couldn't reveal because of HIPAA or whatever was in place in Montana, the source of that. She was afraid that that information could impair her later. The judge said, well, you still try to be fair, and the juror said, well, of course, I'm going to still try to be fair. What we would argue, and I think that is amply supported, is that juror should have been excused on partiality grounds and would have prevailed if that had been raised on the appeal. But, obviously, it wasn't raised. But we don't know what the information was. She said, I'll base my ruling or my verdict on the evidence and the instructions. And in the absence of an evidentiary hearing establishing somehow that she did know additional information that influenced the jury's deliberations, I'm having a hard time seeing the prejudice. We're dealing with picking a jury in a relatively, well, it's a small community, I guess, by other Ninth Circuit standards, but Yellowstone County. You know, you're going to have situations where potential jurors know of or families of people who are involved in cases that they're called upon for jury duty. Your Honor, I'm happy to address that issue. I was happy to address it in the district court. We tried to brief it, and we asked the court to reach it. The court didn't. But isn't the answer we just don't know because there isn't a record on it at this  There's no record to know based on what the state of the Montana law was at that time. There's a very similar case, Williams from 1993, that said this shouldn't happen. We shouldn't have somebody in this posture sitting on a case, especially ---- I don't understand that. I never tried a case where I didn't know some of the jurors, and I never tried a case where some of the jurors didn't know some of the witnesses. Often doctors were testifying, and some jurors used those doctors. I mean, in Los Angeles, you know, it's easy to try cases where nobody knows anybody. But it's not the way trials are in Fairbanks, Alaska, and Fairbanks, Alaska is probably typical of more places in Los Angeles. Well, Your Honor, I'm primarily a trial lawyer. I've tried cases in many different places. I'd love to have you here. I've never tried. I'd love to have you in Fairbanks because I would have known the jurors, and you wouldn't have. I tried a case in Fairbanks once. But I've never tried a case where a juror says, hey, I have confidential information about this. I can't really tell you what it's about. I'm concerned that as I hear more about this case that it may affect me. I mean, I know jurors are always going to say, I'll try to base my evidence on the ---- I mean, that was the problem. That's what the Montana court said. You shouldn't be doing that. You shouldn't, Judge, be stepping on the jurors and saying, come on, you can put that aside, do your best. And what I would say is that at the very least, this is a significant concern and was a concern even to the district court. It said, based on the state of Montana law, this is a significant claim. It should have been raised. I mean, we're asking, the person was sentenced to 100 years here. Why wasn't it raised? There's no explanation. It should have been raised. So what I would submit is the simplest course and the most prudent course, rather than getting into an en banc situation, may be to remand back to the district court and get further information about these particular claims, because there may be a way to avoid the Mormon issue. But I also think that ultimately, I'm going to convince the court that there's prejudice, and then we may get to what are we going to do about Carlson. We'd better opt to get Mormon resolved as long as it's here now. We've got able counsel on both sides. I'm happy to do it. I mean, Your Honor, I welcome the chance. I think Mormon was rightly decided, and I welcome the chance to go en banc. And obviously, I would ask the Court to just follow Mormon, and that would be my view. If we requested an en banc vote of the Court, I don't know how it would come out. I mean, I can't sit here right now and say that it would go or won't go. But we've certainly been hearing a lot of en banc cases recently. I don't know precisely how to answer, except for I think Mormon is rightly decided. I ask this panel to follow it. But if there's some concerns and there's a need for uniformity, that's one of the Counsel? Thank you. Even though you're over time, figure on one minute for rebuttal.  Thank you very much, Your Honor. May it please the Court. Mark Fowler for the State of Montana. Good morning. To go directly, Justice Talmadge, to your question and the question that is apparent on the mind of the Court, what to do with Mormon. Obviously, in the appellee's brief, I've stated you don't have to deal with it. But given that's the State's position, I'll address the issue of Mormon directly in that I think that Mormon is sort of the foster child of a prior decision five years before, and that's the Manning v. Foster. If you look at the Manning v. Foster case, I think which Mormon cites, but in a CF designation, the signal is sort of compare or look at. Okay? But if you look at Manning v. Foster, I think the Court at that time was attempting to bring out of or make a distinction in the jurisprudence involving procedural thought and what you can do to establish cause in prejudice justification. And, of course, you have to recognize that in Murray v. Carey, United States Supreme Court said Sixth Amendment claim can establish cause in prejudice, Strickland v. Washington. However, there are cases and situations where you have an attorney, and it's not a Sixth Amendment Strickland claim. You have an attorney who's actually opposing the Petitioner's interest. And in this case, it supplies the objective external impediment that prevented the Petitioner from bringing his claim. I think that the way to look at Mormon is to look at that case and find that perhaps it arose out of that, no disrespect to your colleagues in the Mormon case, but perhaps inartfully presented in its jurisprudence in a discussion of prior case law. If you want to deal with Mormon, deal with Manning in the attempt to make that divide. In this case, I think that you can still apply Mormon. In fact, the State wants you to apply Mormon. We never, in the case in the Court below, contested that Mormon did not apply in the situation where Hooks, the trial attorney who became post-conviction attorney, did not have a conflict of interest. We didn't dispute that. And I want to be adamant in my emphasis here not to remand this case. The issue of cause in prejudice justification was squarely presented in the motion to dismiss filed by the State, which was on the invitation of the Court. The Court invited the State to file a motion to dismiss. When we filed the motion to dismiss, we put procedural faults squarely up front in that neither, again, not contesting Hooks, we went to say there's no conflict of interest in Mormon to be applied to Chad Wright, the co-counsel, and it is, and we emphasize that it is the petitioner's duty to establish cause in prejudice justification. In reply, in reply to that motion to dismiss, the petitioner wrote a memorandum in support, November 20, 2006, page one, I think, of the memorandum. The position stated, we respond to say the State's arguments are meritless and that this Court, based upon the record, the State court record, can dispose of this claim and we have established cause in prejudice, they emphasize on page 20, with the exception of two extra record facts, and that were two declarations, one from Mr. Hooks and one from Mr. Wright himself. But outside of that, this claim is ripe for review here, sua sponte. There's no need to send it further back. The petitioner has not, specifically has not proven cause in justification, cause in prejudice justification to excuse. Alito Is the idea that he didn't show cause for Wright not raising in the State post-conviction relief proceedings, Hooks's alleged ineffective assistance? That's correct. To be precise, yes. That is the very claim that Wright did not amend the post-conviction petition to include when he could have, when he could have. Clearly, that is a factual finding by the magistrate. The reason why the State argues that petitioner has waived it is because that is the critical, critical burden of petitioner in habeas. Show cause in prejudice justification. Well, perhaps you have with Mr. Hooks, but you had other co-counsel, and you're not saying anything in your opening brief about the magistrate's determination of the factual underpinnings of this procedural fault. The reason why you can apply Mormon is that, as we say in the motion dismissed in the court below, Mormon itself discusses the fact that you had one conflicted counsel whose trial counsel became the, or rather, appellate counsel became the post-conviction counsel, and mind you, too, a significant fact in the case is Cimino, the attorney who was that conflicted counsel, asked the State trial court to appoint other counsels, so other counsels. Hooks was both trial counsel and appellate counsel. I'm sorry. I'm sorry if I misled the Court about that. I got my facts. In this case, Hooks was both trial counsel and appellate counsel. We have a gentleman named Woodward. Wright was just appellate counsel. We have a gentleman named Woodward as trial counsel. Hooks was a first direct appeal counsel and the post-conviction counsel to the point where he filed the post-conviction petition, then got off the case, but I think Petitioner has established he's had some involvement with the case all the way through. After he left the Montana appellate defense. Right. After he left the Montana appellate defender's office, Chad Wright became appellate defender soon afterwards and became counsel of record through a good portion of the case. When they have an evidentiary hearing in the same case, the first thing in the trial record shows, the first thing Mr. Wright says to the state post-conviction court is I'm here today, I am counsel for Mr. Wright. With me, assisting me is Mr. Hooks. In other words, this is an auxiliary subsidiary attorney who is assisting Mr. Wright, who is acting for all intents and purposes as the attorney in control. So you say Mormon is not inconsistent on its facts where there was only one lawyer who at some point recognized he might have a conflict, asked the Arizona courts to appoint another lawyer to counsel Petitioner on the merits of an IAC claim, and presumably the Arizona courts said no, we're not going to give you another lawyer. I think implicitly, at least, there is a situation where there's a state court saying no, you're not going to be allowed to do that. There's an impediment to the Petitioner presenting his claim. When Chimino, the conflicted counsel, says we need another counselor here to present effective assistance against me. And so the external force was the state trial court judge or whoever it was saying. I'm reading way into that opinion. I'm speculating in other words. But the bottom line is that no conflict-free counsel was appointed in Mormon to advise the Petitioner. And here, if I heard you right, Mr. Hooks had an opportunity to amend the habeas petition. Mr. Wright. I'm sorry. Mr. Wright had the opportunity to amend the habeas petition to include an IAC claim by Hooks and didn't do so. It did not do so. And in Mormon, Chimino, when he's off the case, another counsel is appointed who's not conflicted. And the court, this court in Mormon stated, and incidentally there was a voir dire issue that Chimino, I think, recognized he should have raised on direct appeal. The Mormon court said it is inexcusable, however, for other non-conflicted counsel not to present it when it had the opportunity to do so. And it's not very clear, but I think that what you read, what the identification of the issues that should have been brought that were defaulted on direct appeal, that voir dire issue is dismissed. So we can not make a panel call for en banc on Mormon because Mormon is distinguishable? Yes, very much so. There was no unconflicted counsel to make the IAC claim there and there is here. It's a capital case. It's pre-EDPA. I think there's a lot of facts here. Exactly. If you see the facts in Mormon, Mr. Wright has never been shown to be conflicted in all the authorities, legal authorities. Wright was of the same organization as Hicks was, wasn't he? Yes, Your Honor. I can leave a law firm and come over here and sit on the court and have done something and an ex-partner of mine like Tallman takes over and he proceeds and nothing's done about the conflict because the firm's worried about it. Your Honor, that very question is answered by Petitioner's own cited precedent where these cases are entirely, every single one of these cases deal with same attorney, same office, same time of simultaneous employment. We don't have a simultaneous employment issue here. And to address your question, in the last of the cases, State v. Lenz talks about, you know, when you have an appellate defender's office and someone leaves or even when you have an appellate defender's office of a statewide appellate defender's organization and it's an attorney in another office somewhere else, you know, there's issues of esprit de corps and the need to not, you know, the state of the embarrassment are not as keen. As a matter of fact, the remand of that case in the Levitt decision out of Ohio, the state, you know what, we don't know about, for instance, the situation, so let's look at specifically whether there was conflict between these two same office attorneys' simultaneous employment issues. But all these cases are distinguished because the appellate defender's office was not representing, technically representing, Mr. Wright, it was the individual attorneys in their individual capacities. Now, my petitioner in his reply brief said he's consistently stated, well, it's the office we're saying is ineffective. We've consistently stated that. That is incorrect. That is incorrect. That's not what he's been saying. He's been saying Mr. Hooks' individual capacity could not have claimed ineffective assistance upon himself. Okay, true enough under Mormon on his face. However, Mr. Wright, they've never established any authority, any facts to establish that Mr. Wright was in any way impeded by a State court, by Mr. Hooks, by Mr. Wright's own intercession. Mr. Wright would be blaming his subordinate, Hooks, is that right? Hooks is gone. Hooks is gone. He had left the office. He's in private practice. So would it be analogous to what Judge Beeser described where Hooks is basically blaming his own law firm and setting his own law firm up for malpractice? It would be right as the new appellate defender who would be blaming the prior, the predecessor. I didn't have an associate. But if I had and I went into court and I said my associate committed malpractice in this case, that would mean I pay. Well, Your Honor, Petitioner's own cases on conflict talk about those considerations. Those are inherent in a situation where you work in the same office. You simply can't do that. The reputation of the office is at stake, for instance. Those aren't the considerations where someone leaves the office entirely. And I think many, I can't point to which one of the Petitioner's cases talk about this, but they say those concerns aren't here when you leave the office. I must be misunderstanding something. If I had an associate and I fired him because he was a lousy lawyer and then I went into court and said my associate committed malpractice in this case, I still have to pay. I'm sorry. The associate worked for me in my office. He committed malpractice. I fired him for it. He's gone. And now I go into court and I say my associate committed malpractice in this case. I have just basically agreed to pay a malpractice claim. Perhaps so, sir. But we are in habeas and habeas demands that if a Petitioner has a claim, he must present it to state court. You cannot, if you have the opportunity, you must take it. So why isn't Wright conflicted for the reason that Judge Beezer raised? Because his overarching duty is to represent that client. Albeit there is embarrassment and awkwardness in attacking another attorney who has left the office. Would it cost his office money the way it would a private firm? Your Honor, I've cited a dictated language from the United States Supreme Court decision in my brief where it said that appellate defenders' offices do not, around the country, perhaps I'm speaking too broadly, I make too broad a blanket generalization, fall on their swords all the time when necessary in effective assistance of counsel claim. They do not hesitate to bring up claims against former attorneys from their same office. And I think that's probably unique to appellate defenders' offices as it would be to other firms who don't want that kind of embarrassment. And maybe that would be a different case. It would be a different case in private practice, sir. But here, appellate defenders' office, the attorney is gone. And in more direct answer to your question, simply there is no authority presented by petitioner who has the burden to prove cause and prejudice. Chad Wright was conflicted. And I'm way over my time. It looks like, or at least I have two minutes left, so I want to save it for the additional questions that you may have. I'm glad to answer. I ask that you, here and now, dispose of the ripe issue before it. This Court has not hesitated to reach procedural defaults of esponte. As a matter of fact, in some cases where the State has been the appellant and has raised the claim of procedural default but hasn't briefed it, has claimed, you know, we're not going to look for authorities for you, and has declared the State has waived procedural default. We ask, the State asks you here to declare that petitioner has waived the burden here by not even addressing it. Clearly it's made known in his reply brief that, you know, essentially we have no obligation to address issues that the State thinks are dispositive. We don't have to address that. Well, that is the dispositive burden here, and he has failed to prove it. Thank you. Thank you, counsel. It's hard for me to understand why a public defender who belongs to an association or a corporation represents clients, commits malpractice, and leaves, why the association or the partnership or corporation is not liable for the misconduct. It's a matter that's of great concern to the Montana Supreme Court. It has not been decided whether or not an ineffective system of counsel claim automatically it gets ---- Let's go back to just law school associations and partnerships and business associations. I mean, it's sort of a general rule of ---- Certainly the private law firms are up against it, and repeatedly so. You see it in any major community any time you get into this area. But I don't know why just because you're a public defender there's any special protection, any more than legal services for commercial transactions or divorces, for that matter. Your Honor, may I have a very good point? However, there are no facts in this record. Okay. Thank you. Let me just answer that question. At the record at page 80, which is the district court's decision in footnote 9, he says, The parties describe different significance to the fact that Hooks and Wright were at one time members of the same law firm. The Court will not address that issue here. So the Court specifically said it won't address it here. But if I had, I would have probably come to the same ruling. Wright was actually working under Hooks. Hooks left to go into private practice. Hooks says, I'm going to take the case with me. And Wright rises to become the supervisor of the office. There's no way Wright can claim that his office was ineffective previously without having a conflict of interest. Basically, he's saying that my – when I was an associate there and we were working on things, my boss screwed up our case. And it seems to me that it's imputed disqualification under the ethics rules. The reason we don't do that in a private law firm, we would just send the person to another law firm, is if I say my boss screwed up the case before he left, then my malpractice insurance premium goes up. It costs me money. So the conflict of interest is quite clear. I've got to send the person to another lawyer to deal with this. Same in criminal defense practice. Private firm. You can get an outside counsel. In a private firm, it is. But is that true in a public defender's office? It's true in my experience. If a public defender has a conflict, they ask for conflict counsel. Well, wait. The public defender conflicts where they get conflict counsel are always where they represented the complaining witness before as a defendant or there are multiple defendants and it's a race to the DA's office to snitch out one of them and get a deal. I didn't think they bought malpractice insurance or that any money came out of their pocket if somebody messed up. Well, I can't speak to Montana, but they do in my experience. And they also have conflicts like this person filed a bar complaint against me and we're in litigation about a bar complaint. So there's more conflicts than just multiple representatives. So it is more like private firms that do buy malpractice insurance? Absolutely. You don't think public defenders get sued? I can show you Washington State cases. I'm sure they get sued, but I thought it was like when police get sued, the department usually buys and has the insurance. Now it's malpractice insurance just like it would be in any law firm and your rates get changed by claims. In any event, I think it's a distraction in a sense. I mean, it seems to me they're the same firm. It's call it what you will. Apples, oranges. No. Apples and apples. Thank you. Thank you, counsel. Good afternoon. Sorayich v. State of Montana is submitted.
judges: Beezer, Kleinfeld, Tallman